# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-01029-SCT

*JIMMY BASS*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/95 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | LAWRENCE Y. MELLEN |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 11/6/97 |
| MOTION FOR REHEARING FILED: | 1/5/98 |
| MANDATE ISSUED: | |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

This appeal comes from the Circuit Court of Bolivar County, which on August 11, 1995, denied Jimmy Bass' motion to vacate and set aside his conviction and sentence for armed robbery and aggravated assault. Bass assigns as error the following issues.

> **I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GIVE A CAUTIONARY JURY INSTRUCTION.**
>
> **II. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**
>
> **III. WHETHER NEWLY DISCOVERED EVIDENCE ENTITLES BASS TO A NEW TRIAL.**

**IV. WHETHER BASS' DUE PROCESS RIGHTS WERE VIOLATED RESULTING IN A MISIDENTIFICATION AT TRIAL.**

**V. WHETHER BASS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

## FACTS

The facts of this case are set forth fully in our opinion affirming Bass' conviction and sentence on direct appeal. *Bass v. State*, 597 So. 2d 182 (Miss. 1992). A brief summary of the facts is presented below.

Mary Townsend was a cashier at the "61 Quiki" convenience store in Cleveland, Mississippi. On July 17, 1988, Townsend was shot twice during an armed robbery of the store by three black males. On October 26, 1988, Jimmy Bass and Markius Thomas were indicted in the Circuit Court of Bolivar County for armed robbery and aggravated assault. At trial beginning on December 7, 1988, Keith Thompson testified that he was in the vicinity of the store immediately after the robbery occurred, and that he saw Bass, Thomas and another black male running down the highway away from the 61 Quiki. He testified that he had known Bass and Thomas for a long time and recognized them immediately. According to Thompson, Bass had what looked like a pistol in his hand and was trying to put it into his pocket while he ran. Thompson also testified that the night before the robbery, Bass let him hold a .38 revolver which Bass had in his possession.

Bass testified that he was with Thomas on the afternoon of July 17, 1988, but that he and Thomas were both at their respective homes that night. Thomas did not testify. Bass and Thomas each called witnesses who testified that they were at home on the night of July 17, 1988.

The jury found Bass and Thomas guilty of both counts, and the trial court sentenced them each to serve thirty years for armed robbery and twenty years for aggravated assault. Bass and Thomas appealed to this Court, which affirmed their convictions and sentences in *Bass v. State*, 597 So. 2d 182 (Miss. 1992). On May 15, 1995, Bass filed in the Circuit Court of Bolivar County a Motion to Vacate and Set Aside Conviction and Sentence. On August 11, 1995, the circuit court denied the motion.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GIVE A CAUTIONARY JURY INSTRUCTION.

Bass argues that because two of the State's witnesses, Keith Thompson and Anita Thompson, gave contradictory and uncorroborated testimony on direct and cross examination, the trial court erred in failing to instruct the jury to view the witnesses' testimony with caution. The record before us contains no trial transcript, and Bass did not raise this issue on direct appeal. Because this issue clearly was capable of determination at trial and/or on direct appeal, Bass is procedurally barred from raising it in his motion for post-conviction relief. Miss. Code Ann. § 99-39-21(1) (1972).

### II. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING

**WEIGHT OF THE EVIDENCE.**

Bass argues that the evidence was insufficient to support a conviction of armed robbery and aggravated assault. Again, because this issue was capable of determination at trial and/or on direct appeal, it is procedurally barred.

### III. WHETHER NEWLY DISCOVERED EVIDENCE ENTITLES BASS TO A NEW TRIAL.

Bass attached to his motion for post-conviction relief an affidavit signed by Keith Thompson. The affidavit, dated April 29, 1993, states that Thompson's testimony at Bass' trial was not true, that Investigator George Serio of the Cleveland Police Department paid Thompson and his sister, Anita, to give false testimony against Bass, and that Thompson in fact does not know who robbed the 61 Quiki on July 17, 1988. Citing *Tobias v. State*, 584 So. 2d 1276, 1278-79 (Miss. 1991), Bass argues that Thompson's recantation of his trial testimony is newly discovered evidence, and that there is a substantial probability that a different result would be reached if a new trial is had without it, thus entitling Bass to a new trial. We find that this argument must fail.

In its answer to Bass' motion for post-conviction relief, the State attached a transcript of an interview with Keith Thompson, dated June 6, 1995 and conducted by Investigator Serio. The transcript was accompanied by an affidavit signed by Thompson stating that the contents of the transcript were true and correct. In the interview, Thompson stated that when he testified against Bass at trial, he did not lie for anybody, and that the statements he gave in his testimony were true. Thompson stated that after the trial, he served some time in Parchman, during which time he had contact with Bass. He stated that sometime in 1991, Bass asked him to sign a piece of paper, but he refused, telling Bass that he would not sign any court papers. Bass told him that they were not court papers, so Thompson signed the paper. According to Thompson, Bass approached him again in 1992 or 1993 and asked if Thompson would go to court and testify that he was paid to lie at Bass' trial, which request Thompson refused. Bass told him that he had already sent the papers in and Thompson's signature was on the paper, so Thompson did not have a choice. Thompson told Bass that if Bass had something with Thompson's name on it, Thompson would just go to court and tell what really happened. Thompson maintained throughout the interview that he never signed any court papers for Bass.

It appears that even if Thompson did in fact sign the affidavit filed by Bass, Thompson never intended to recant his trial testimony and would give the same testimony if called to testify again, thereby nullifying any substantial probability that a different result would be reached if a new trial were granted. As it plainly appears from the face of the documents filed in this matter that Bass is not entitled to any relief, the circuit court acted within its discretion in denying the motion. Miss. Code Ann. § 99-39-11(2) (1972).

### IV. WHETHER BASS' DUE PROCESS RIGHTS WERE VIOLATED RESULTING IN A MISIDENTIFICATION.

Bass fails under this assignment even to mention any alleged misidentification which occurred at trial, but instead again attacks the sufficiency of the evidence against him. Also, because the record before us contains no trial transcript, we are unable to review the testimony in which Bass was allegedly

misidentified. In any event, because this issue was capable of determination at trial and/or on direct appeal, it is procedurally barred.

### V. WHETHER BASS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

Bass argues that he received ineffective assistance of counsel in that his attorney failed to request a cautionary instruction, for which proposition he cites *Stringfield v. State*, 588 So. 2d 438 (Miss. 1991), a case which makes mention neither of ineffective assistance of counsel nor of cautionary instructions. Again, we have no trial transcript before us to aid our review of this assignment. Bass has failed to make the showing required under *Strickland v. Washington*, 446 U.S. 668 (1984) that he received ineffective assistance of counsel. Finding no merit among Bass' assignments of error, we affirm the circuit court's denial of Bass' motion for post-conviction relief.

**LOWER COURT'S DENIAL OF POST CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J.**

### BANKS, JUSTICE, DISSENTING:

I respectfully dissent from the majority's conclusion in Issue III regarding the conflicting affidavits from the State's main witness at trial, Keith Thompson. These affidavits are both apparently authentic and raise a factual issue of whether Thompson was paid by the police to lie at Bass's trial. No evidentiary hearing was granted on this issue in the circuit court, and I believe the trial court erred when it dismissed Bass's petition on the ground that "it plainly appears from the face of the foregoing records that the Petitioner is not entitled to any relief."

There is little question that Bass's assignment of error would have merit in his post-conviction relief action. That is, assuming a genuine dispute as to the authenticity of the conflicting affidavits from Thompson, his recantation would constitute new evidence that could not have been discovered prior to trial by the exercise of due diligence. *Tobias v. State,* 584 So. 2d 1276 (Miss. 1991).

Of course, an evidentiary hearing is not to be granted every time there are conflicting affidavits. As we stated in *Harris v. State*:

> In order for a contested fact to require an evidentiary hearing it must be material. Moreover, where an affidavit is belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary, to the extent that the court can conclude that the affidavit is a sham, no hearing is required.

*Harris v. State,* 578 So. 2d 617, 620 (Miss. 1991). Here, the evidence would certainly appear to be material. Thompson, who knew Bass before the robbery and identified him as the person who was running from the store with a pistol, was the prosecution's main witness. *See Bass v. State,* 597 So.

2d 182, 183 (Miss. 1992). Further, I would submit that the State's counter-affidavit, which belies Thompson's recanting affidavit put forth by Bass, is not "unimpeachable." In other cases which have been dismissed on the record alone, at least one of the subsequent affidavits has been that of the defendant, and has conflicted with testimony of the defendant himself--generally when entering a guilty plea. *See* ***Taylor v. State,*** 682 So. 2d 359, 363 (Miss. 1996); ***Smith v. State,*** 636 So. 2d 1220, 1224 (Miss. 1994); ***Mowdy v. State,*** 638 So. 2d 738, 743 (Miss. 1994). This Court has dispensed with those cases on the rationale that a great deal of emphasis is placed on testimony by a defendant in front of the judge when entering a plea of guilty. *See* ***King v. State,*** 679 So. 2d 208, 211 (Miss. 1996). Here, we have new evidence by the prosecution's main witness suggesting that he lied at trial. This is a far different situation than a petitioner who wants to contradict his own deliberate choices made when entering a guilty plea.

In my view the trial court abused its discretion by not granting an evidentiary hearing on this issue. This Court eschews trial by affidavit, and genuine issues of material fact should not be resolved in this manner. ***Harris,*** 578 So. 2d at 619; ***Neal v. State,*** 525 So. 2d 1279, 1281 n.2 (Miss. 1987). Here, there exist two conflicting and seemingly authentic affidavits from Thompson, involving a material issue of fact. While the State's affidavit is later in time than the one offered by Bass, and appears to be notarized and legitimate, it cannot be said to be "unimpeachable" on its face. It should also be noted that the interview was held by the same police officer accused of paying Thompson for his perjured testimony. Thus, I would remand this issue to the trial court for an evidentiary hearing, with Thompson as a witness, to clear up the discrepancy between these two facially legitimate affidavits and to allow a court to determine first-hand the issue of Thompson's credibility and its effect on the issue of whether a new trial should be ordered.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**